## BINFORD v. ECCLES.

No. 2346.   Decided July 29, 1912.   On Application for Rehearing September 4, 1912 (126 Pac. 333).

1. BOUNDARIES—ACQUIESCENCE. Where the owners of adjoining lands occupy their respective premises up to a certain line which they mutually recognize as the boundary line for a long period of time, they and their grantors may not deny that the boundary thus recognized is the true one.[1]   (Page 457.)

ON APPLICATION FOR REHEARING.

2. BOUNDARIES—EVIDENCE—SUFFICIENCY. Evidence in ejectment *held* to sustain findings in plaintiff's favor as to the existence of surplus land in a block and acquiescence in a boundary line.   (Page 460.)

APPEAL from District Court, Second District; *Hon. J. A. Howell,* Judge.

---

[1] Holmes v. Judge, 31 Utah, 269, 87 Pac. 1009; Rydalch v. Anderson, 37 Utah, 99, 107 Pac. 25; Young v. Hyland, 37 Utah, 229, 108 Pac. 1124.

Action by Sarah E. Binford against David Eccles.

Judgment for plaintiff.   Defendant appeals.

AFFIRMED.

*Richards & Boyd* for appellant.

*A. G. Horn* for respondent.

FRICK, C. J.

This is an action in the nature of ejectment instituted to recover possession of a strip of ground less than two feet in width by 130 feet in length. Upon a trial to the court it made findings of fact which, in our judgment, clearly reflect the allegations of the complaint and the evidence adduced in support thereof, and for that reason we shall not refer to the pleadings filed by respondent. The only defenses interposed by appellant consisted of a denial of respondent's ownership and an affirmative statement that appellant owned the strip of ground in question. The findings of fact are as follows:

"(1)   That the plaintiff now is, and for more than fifteen years last past has been, the owner of and entitled to the possession of and in the possession of the following described real estate, to wit, a part of lot 6, block 24, plat 'A,' Ogden City Survey, beginning at a point 55 feet east of the northwest corner of said lot 6, and running thence east 26½ feet, thence south 130 feet, thence west 26½ feet, thence north 130 feet to the place of beginning.   (2)   That the defendant owns the land adjoining the land owned by the plaintiff as shown by his title papers.   (3)   That there is a surplus of land in said lot and block over and above what is called for by the original plat of said land, and that the original boundary lines of said lot and block were not marked on the land by monuments other than by fence lines located by the respective owners of the lands located in said lot and block.   (4)   The court further finds that said lot and block aforesaid contain a surplus of land over and above the amount

called for in the official plat of Ogden City, and when the same was platted the corners and exterior limits thereof were not definitely marked upon the land so platted, and therefore the predecessors in interest of the plaintiff and defendant herein, as well as other owners of the land in said block, determined and located upon the land the boundary lines of said lot and block and also the boundary lines of the land of the plaintiff and erected fences, buildings, and other structures in conformity with such determination and location, which said determination and location has been acquiesced in and agreed to by this plaintiff and her predecessors in interest and also by the owners of the land adjoining her land on the east for over twenty years, and the same has never been disputed until about the year 1908, when this defendant, having shortly prior thereto become the owner of this said land which adjoins plaintiff on the east, began a dispute as to the boundary line between himself and this plaintiff and against plaintiff's express written protest removed the fences and other objects theretofore placed as defining the boundary line of the lands of the plaintiff and the defendant and erected a building upon his own land, the west wall of which extended over the boundary line as theretofore recognized by the respective owners of the land on each side of said boundary line, and the court now finds that the wall of said building extends over and across said boundary line and upon the land heretofore recognized as being the land of the plaintiff to the extent of 1.8 feet on the north end of plaintiff's land and at the south end to the extent of 1.3 feet."

The court made conclusions of law and entered judgment awarding possession of the strip of ground described in the findings of fact to respondent, from which judgment appellant prosecutes this appeal.

The only errors assigned are that the evidence does not sustain findings 3 and 4; "that the conclusion of law is not responsive to either the pleadings, the findings of fact, nor the undisputed evidence;" and "that the findings, conclu-

sions, and judgment are not responsive to the issues" presented by the pleadings.

After carefully reading the evidence preserved in the original bill of exceptions, we are thoroughly convinced that the findings of fact are not only supported by the evidence, but that they clearly reflect the same. The evidence is undisputed that the ground claimed by both parties to this action at one time was owned by one and the same owner; that approximately twenty-five years before the appellant became the owner of the land now claimed by him the prior owner sold a parcel of ground off the east side of his ground to one of appellant's predecessors in title, and after having sold and conveyed the same the predecessor aforesaid desired an additional three-foot strip along the west side of the parcel before purchased by him, which the owner sold and conveyed to him; that after such conveyances the purchaser of said strip erected a substantial fence along the west boundary line of said strip; that said fence from thence forward for approximately twenty-five years before appellant became the owner of the parcel of land purchased as aforesaid from the original owner was always recognized and maintained as the boundary line between the parcels of land, one of which is claimed by respondent and the other by appellant; that during the time aforesaid said fence at times required repairing and replacing, which was always done when necessary by the owners of the parcels of land lying on either side of the strip by each owner contributing his proportion of the cost of repairs or maintenance. The evidence also shows that, when respondent purchased the parcel of land described in the findings, she purchased a parcel described by metes and bounds, the same being twenty-six and one-half feet in width from a certain known point; that said twenty-six and one-half feet did not extend to the fence in question within twenty inches or two feet; that respondent's predecessor in title and grantor, however, claimed, and she informed respondent, that there was a surplus of ground in the block in which said parcel of land was situated and that said surplus would extend the parcel purchased by respondent to the

fence aforesaid. Respondent, therefore, during all of the time she owned said parcel up to the time of trial, the same as her predecessor in title had done, claimed the fence as marking the east boundary line of her parcel of land and as constituting the boundary line between her land and the parcel now claimed by appellant. This claim no one disputed until after appellant became the owner of his parcel in August, 1903, and apparently it was not disputed until the year 1906, when appellant started to erect a building on his parcel, and in doing so tore down the fence aforesaid and started to excavate for the foundation of his building by encroaching to the extent found in the findings on what respondent claimed as her land. When appellant had torn down the fence and had commenced, or was about to commence, to excavate upon what respondent claimed to be her parcel, she at once notified him in writing to desist from encroaching upon her land, but he disregarded her notice and protest and erected his building and placed a part of all of the west wall thereof on respondent's ground to the extent found in the findings of fact.

Appellant's counsel do not dispute any of the foregoing facts, but they contend that when respondent purchased she purchased a parcel twenty-six and one-half feet commencing at a designated point; that by measuring from said point said twenty-six and one-half feet did not extend the east line of her parcel of land to the fence aforesaid, but left a distance between said fence and said east line of about twenty inches or two feet; that the east boundary line where said twenty-six and one-half feet terminated was always known or easily ascertained, hence there never was any uncertainty with regard to where the east boundary line of respondent's parcel was, and, this being so, the fence was not intended as, nor does it constitute, a practical location of a disputed or an unknown boundary line, and therefore the principle of law which controlled the cases of *Holmes v. Judge*, 31 Utah, 269, 87 Pac. 1009, *Rydalch v. Anderson*, 37 Utah, 99, 107 Pac. 25, and *Young v. Hyland*, 37 Utah, 229, 108 Pac. 1124, does not apply to this case. We cannot

agree with this contention.   There was a question in this case with respect to the quantity of surplus ground, and respondent's east boundary line was therefore extended beyond the limits of the twenty-six and one-half feet to the fence.   It is not material whether respondent obtained more or less than her proportion of the alleged surplus ground existing in the block.   It is sufficient for the purposes of this decision that she laid claim to some of the surplus ground and that she and her neighbor who joined her on the east acquiesced in the boundary line as marked by the fence existing between the two parcels of land.

The evidence clearly is to the effect that appellant's predecessors in title recognized the fence in question as constituting the west boundary line of the parcel of ground now claimed by him, regardless of where the twenty-six and one-half feet terminated.   This fact brings this case squarely within the doctrine announced in the foregoing cases.   In *Holmes v. Judge, supra,* at page 281 of 31 Utah, at page 1014 of 87 Pac., we said:

> "In all cases where the boundary is open and visibly marked by monuments, fences, or buildings, and is knowingly acquiesced in for a long term of years, the law will imply an agreement fixing the boundary as located and will not permit the parties or their grantors to depart from such lines."

Following the foregoing case in *Young v. Hyland, supra,* Mr. Justice Straup, at page 234 of 37 Utah, at page 1126 of 108 Pac., said:

> "Where the owners of adjoining lands occupy their respective premises up to a certain line which they recognize and acquiesce in as the boundary line for a long period of time, they and their grantors may not deny that the boundary thus recognized is the true one."

That the foregoing is a wholesome and salutary doctrine when properly applied and enforced, the case in hand clearly demonstrates.   If appellant's contention as made in this case should prevail, then, although respondent had placed permanent buildings up to the fence line, yet appellant could com-

pel her to remove them because they were placed beyond the limits of the twenty-six and one-half feet, which is the quantity of land called for in her deed, unless she could in some way or by some means establish an estoppel against appellant or his grantors. Appellant would thus be permitted to unsettle boundaries which by the adjoining landowners had been recognized and acquiesced in for approximately a quarter of a century. Any rule of law which would permit such a result would be pernicious, and in the long run would produce strife and litigation, and in the nature of things would often result in injustice if not oppression. As we have pointed out in the cases referred to, the rule has certain limitations and exceptions, and each case must therefore to a large extent at least be controlled by its own facts and circumstances. The case at bar, in our judgment, however, falls squarely within the rule laid down in the cases referred to, and the facts and circumstances of this case only tend to emphasize the wholesomeness of the rule as laid down in the cases referred to.

We desire to add, in conclusion, that, in view that appellant interposed no defense save ownership, the trial court upon the undisputed evidence could do nothing save to enter judgment awarding respondent possession of the strip of ground in controversy. In view of the record in this case this court can do nothing save to affirm that judgment, although it may be that under different issues a court of equity would have the power to require the respondent to receive compensation in the form of damages instead of compelling appellant to tear down and remove the brick building, part of which rests upon the strip of ground awarded to her.

Under the issues and the evidence, however, no other judgment than the one entered is permissible, and in view of that fact the same is hereby affirmed. Respondent to recover costs.

McCARTY and STRAUP, JJ., concur.

FRICK, C. J.

Counsel for appellant have filed a petition for a rehearing in which they vigorously contend that we have erred in affirming the judgment. It is strenuously insisted that there is no substantial evidence in support of the finding that there was surplus ground in the block in which the lots in question are located. This contention is answered by appellant's own witnesses. The city engineer of Ogden, who was called as a witness on behalf of appellant, after stating that he was familiar with the block in which the lots in question are located and had made surveys in neighboring blocks, according to appellant's abstract of his testimony, further testified with respect to surplus. He said: "I know that the excess (surplus ground) in that block is about seven feet." Respondent's witnesses had placed it at about eleven feet. Another witness, who said he was a field man in the city engineer's office, also testified on behalf of appellant. In referring to the question of surplus ground he said: "Yes, I think there is a surplus in most all of them city blocks." This had reference to the blocks among which was the block in question. True, this witness also said that according to the descriptions contained in the deeds of the several lots in the block there did not seem to be any surplus ground. This, however, is far from saying that there was no surplus ground in the block in question. After having gone carefully again over the evidence, we do not hesitate to say that, if a finding was ever justified, then the finding that there is surplus ground in the block in question is justified.

It is also contended that we erred in holding that the evidence justified a finding that there was a boundary line established between appellant's and respondent's lots by their predecessors in interest. Upon this question the evidence leaves no room for doubt, and we shall therefore not discuss it further.

It is also strenuously urged that we erred in making the statement that one of the predecessors in interest had at one

time purchased three additional feet of ground and had then located the boundary line fence with reference thereto and as it stood for the time stated in the original opinion. It is contended that the abstract of title introduced in evidence shows that the witness who testified to the purchase and sale of the three feet of ground aforesaid was mistaken. Assuming this to be true, the question still remains: In what way does this mistake, if it be one, affect the result? All the witnesses who knew about the location and maintenance of the fence testified that it was located and maintained at the precise point where the former witness said it was located after the sale and purchase of the alleged three additional feet. It is beyond dispute that the fence was erected and maintained as a boundary line and that this was done upon the theory that the land on one side thereof was owned by respondent's predecessors and that upon the other by appellant's predecessors. This, with the surplus ground, was sufficient reason for establishing a boundary line just as held in the original opinion, and brings this case squarely within the principle laid down by this court in its former decisions.

In view of counsel's strenuous insistence that this case ought to have been distinguished from the cases cited in the original opinion, we have felt constrained to add the foregoing. Counsel should remember that in case of difference between this court and counsel as to whether a case should or should not be distinguished we, and not counsel, must assume the responsibility of determining that question.

After carefully considering counsel's argument in support of their petition for a rehearing, we are still satisfied with the former conclusion. The petition is therefore denied.

McCARTY and STRAUP, JJ., concur.